and we'll start by hearing argument in the first matter on today's calendar. Hamilton International v. Vortic 203369. Mr. Ashton. Good morning. My name is Michael Ashton and with me today is my co-counsel Anthony DeFilippi. We're with Abel, Medfrane and Schwab, counsel for the plaintiff appellate Hamilton International. In this case, there's no dispute concerning the following relevant facts. Hamilton is an extremely well-known and famous trademark and Hamilton International has the exclusive right to use the mark in connection with timepieces. The appellate Vortic LLC manufactured and sold wristwatches they constructed by modifying and assembling parts taken from 100-year-old non-working Hamilton pocket watches. They assembled the movements and then inserted those into new wristwatch cases that they created using 3D printing. Now, it's probably obvious, but I'd just like to emphasize the fact that these movements came from antique pocket watches, not wristwatches, and they were inserted into a brand new wristwatch case. The movements, the repaired movements that display the original Hamilton trademark on the edge are visible through a clear watch back, as is the trademark. The defendant's watches also use an original Hamilton pocket watch dial, which prominently features the Hamilton trademark on the face of the dial on the watch. Appellee's principle is on record as having described these watches as fragile and not to be worn daily. The only admitted evidence of a purported disclaimer shows a watch bearing the Hamilton trademarks, but it does not advise consumers that the watch is not from, affiliated with, or sponsored by Hamilton. On the back, it says the Lancaster and then there are other features of it that mark it as not a Hamilton watch. Would you agree with that? Well, I would agree with part of that. There is the Vortec name on the back of the watch, not on the front of the watch, but there is nothing that suggests that the watch is not affiliated with or sponsored by or that indeed the movement is not an original intact Hamilton movement. In addition to that, the front of the watch only displays one trademark, Hamilton, and there have been a number of cases involving reconstructed watches and repeatedly courts have held that there can be no legend on the watch itself that could dispel the likelihood of confusion in this case. I think in addition to that... Thank you. I fell prey to the same problem. Could you explain then, how do you deal with Champion? Because as I recall, in Champion, there was a different company, not Champion, that was reselling these refurbished Spark plugs. They stamped used on it, but I don't think they... I can't remember the name of the other company, but they didn't stamp their name on it. The only name, as I recall, was Champion. So it can't be that just leaving the original trademark on it alone creates this problem. So why isn't that the same situation here? You've got Hamilton, just like you have Champion, but you have additional repackaging and relabeling on the back. In fact, here, unlike Champion, they actually stamp Vortech on it. Well, I think the distinction between the Champion case in this case is that in Champion, they were reselling original, unmodified, genuine products. In this case, the distinction is important. First of all, it's repackaged. It's not just a Spark plug that's been repaired and refurbished and is essentially intact in the original product itself. In this case, they have functional. They were rusted. In fact, the defendant's principal is on record as saying that they're often rusted and they have to take parts from three or four different watches. They then significantly modify those movements. Those movements came from a pocket watch that were used by train conductors. And so the inability to casually change the time was rectified by, in the pocket watches, having something called a leather set mechanism. I guess I understand these facts and they're helpful, but I guess with additional transformation, why is it that additional transformation and additional labeling, in your view, that makes it closer to a trademark violation? I would have thought that that removes the new product further from the original Hamilton product and thereby would reduce the likelihood of consumer confusion. Whereas if you just stamp used on a Champion Spark plug, you'd say, oh, well, that's nice. Champion sells their new Spark plugs and they sell their used Spark plugs, which of course was not true. Well, in this case, I think the important distinction here as well is that Vortec in no instance told consumers what they were getting and the extent of the modifications that were done. Indeed, they stressed that they were getting the original quality of a Hamilton pocket watch, when in fact they were getting nothing of the sort. And with regard to the effectiveness of the potential disclaimer, I'd make two points. One is that it had no impact on downstream confusion whatsoever. And it had no impact on what people would think when they saw the watch being worn. Was there record evidence of that? I'm sorry, record evidence of what? Of the impact. Of the disclaimer? No. And I think that's critical as well. There's quite a bit of authority that suggests that a defendant's burden in... Well, let me flip it. Was there any evidence of confusion? Yes, there was. As a matter of fact, there was an email that was sent to the plaintiff's Canadian affiliate. And there was no attachment to that, right? Oh, yes, there was. There was evidence? Yes. The attachment was an evidence? I thought the testimony was that they didn't know what the attachment was. Well, two things. The testimony was that the person who received the email was not confident that the attachments were... I want to be absolutely correct here. The testimony was that she wasn't sure that the attachments came with the email. But the email itself specifically refers to the attachments. But we don't know what the attachments were. And Judge Nathan heard that testimony, looked at the witness's demeanor and the witness's uncertainty as to whether or not the advertisement was attached, and she essentially discounted that email. How can we consider that now? There are two different things there, I think. The email itself clearly is a business record that should have been accepted. There is, I understand, and the judge had some concern about the witness's testimony and whether or not those attachments were in fact attached to the email. And I would say two things. Number one, the email itself without more is evidence of confusion and refers to those attachments were part of that email. So although the witness was uncertain, I think that the email, which was clearly admissible, clearly indicated confusion, clearly indicated that what was on the attachments was coming from Hamilton and referred specifically to those attachments. That was a factual finding that's reviewable only for clear error, right? So we would have to find that basically there was no rational world in which the district court could have reached that conclusion, right? These component parts of the Polaroid analysis are reviewable as factual findings, right? Correct. Although the sum of the evaluation of those component factors is reviewable to know though. But again, I would stress that the email without the attachments in and of itself was evidence of actual confusion occurring. Mr. Ashton, so you've reserved two minutes for rebuttal. All right. We'll hear from your friend, Mr. Lance, and then we'll come back to you. Mr. Lance. Thank you. You're on mute, Mr. Lance. We're all having the same problem today. I should know better. I do many of these. Good morning. May it please the court, Robert Lance on behalf of Vortec LLC and Robert Thomas Custer. Just so the court is aware, Vortec Technology LLC, I think the court is aware of this, has been dismissed previously from this action. So I represent two of the parties. One of the things I want to address first is, and it's throughout their pleadings, is the quality of the Vortec watch. Is the court just acknowledged or inquired of? These watches come from antique, 100-year-old, up to 1950 year old watches. And the movements are assembled from various parts. They actually manufacture, or they get these parts from new manufacturer. And the watch that's created is basically taking the essentially discarded pocket watch, the movement and the face and the hands, and taking them and preserving them within a case that is subsequently converted in space. Is it your position, Mr. Lance, that the watch itself provides full disclosure, or do we need to look at the advertisements, look at the other forms of disclaimer that just Nathan relied on? So if you just look at the watch itself. Yes, thank you, Your Honor. I mean, we acknowledge that at least with respect to the Hamilton watch, the Hamilton is on the face. That being said, when one looks to the back of the watch, predominantly there's like a ring, an O-ring. There is a Vortec is predominating on that. It says Lancaster. It actually has made in the USA, which by the way, a current Hamilton or a modern day Hamilton is not made in the United States of America. And it would be our position As of when, was it not made in the US? I believe the last time a Hamilton watch was made in the United States was 1962. I could be a year or so off, but it's been a long time. So they have been Swiss manufacturer. They get their movements from ETA or ETA out of China. And then they manufacture them in Switzerland, the modern watch. So this watch, one thing on this watch, it predominates the Vortec name. It predominates the Vortec. The features, the look of it is distinct from one, a pocket watch to a regular Hamilton watch. And at the time... In any event, you're not just relying on the watch itself. Is that right? I'm sorry? You're not just relying on the watch itself. You're relying on other forms of disclosure and statement. Correct? We're relying on both. I think that the watch itself has sufficient disclosure on it. It is not a Hamilton. It says Vortec pretty much all over it, Vortec and Lancaster on the backside. And... You must at some level be relying on the sophistication of the buyer. Yes. Okay. Because I think that an unsophisticated buyer might just view the watch and the face and see the Hamilton mark on it and really not look at the back. But you're relying there on someone who's buying an expensive watch looking at the entire watch. Yes, the entire watch. And to give you an idea of how the watch is presented, it comes in a presentment box. It comes with a certificate of authenticity from Vortec, not from Hamilton. It tells the story of when the watch was made and things like that. So when the consumer of this product is very, shall I say, they know more about watches than I do. And these are consumers that really want the look that's distinct. It is a substantially bigger watch than a Hamilton watch. The other thing, I guess, going back to your comment is we would also rely on the disclosure in this ad that supposedly got us into this situation in the first place. The predominating words, as Judge Nathan noted, is Vortec. It just so happens that the watch that was in this ad in this Canadian publication did have the Hamilton name on it. But when one looks at the ad and one looks at the statements contained in the ad that it's an American watch made from railroad era parts, from movements and railroad era, meaning 100 years ago, a person who is buying these watches is actually looking for a railroad. And there is sort of a term of art with respect to these type of watches. They're actually called marriage watches. There's other manufacturers of this out there that merge old technology, i.e. pocket watches, and make them into watches. And so this is being done with some frequency. Can I ask you about the proximity factor under Polaroid? The district court found that there was no proximity. But it seemed to me that there's an argument there that both Hamilton, modern day Hamilton, and Vortec are making wristwatches. And maybe this goes back to the sophistication of the buyer, but I think the pocket watch would be pretty much in the same market competing with another pocket watch. And I imagine they come in all sorts of shapes and sizes and squares and triangles. And I understand that there are some distinctions here that Hamilton doesn't presently make a wristwatch with the dial at the top like an old pocket watch would. But what can you say there about it? Isn't there a problem with the proximity finding? Well, the proximity finding, we agree with, obviously. But with respect to the purchaser, if one were to purchase a Hamilton watch, the watch, the Hamilton watch is one much less expensive. And these are much more expensive because of the work that goes into restoring the pocket watch. And secondarily, the watch, as I said earlier, is bigger, substantially bigger than any of the Hamilton, I think, lineup right now. This is a 46 millimeter. I think their largest is 42. The way that we sell the watches, for the most part, is through the internet and or from lack of a better term, like farmers market type thing or marketplace type things, where there is a conversation about the watch. And the court may recall from the transcript, there was quite a bit of testimony with respect to when these watches are sold. And I think to this day, most of the consumers do speak with RT Custer, one of the defendants here, and or Tyler, who's another person in his company about, you know, where these watches came from, how they were built and how they were manufactured in to create the present day form. And the other thing I would say is, in terms of, I guess, secondary use or abuse downstream, again, these watches are cherished by their customers, that this is a different domain than a standard modern day. Hamilton watch, these watches are, when you look at them on eBay are actually more expensive after afterwards. So people are collecting these, these are collectors items. There is no dispute that these are antique watches taste in this proprietary watch fitting that happens to fit these watches. And then one other comment, Your Honor, with respect to you know, the sizes, the shapes, the this and that about the pocket watches, with rare exception, the pocket watches were fairly standard in this size, at least for the generation that we're talking about 1950, back to the late 1800s. So, and they're, they're the railroad era. And, and that's what the people are looking for in the, in the watch market. Let me just finish with one further comment, unless you guys have questions. The concern I have is that they keep indicating that we have fragile and worn out material in the watch and they're not reliable. That comment was made by a, it was on a forum where people talk about watches and he was basically conceptualizing what this would look like. These watches, we had no testimony that these were fragile or inadequate. In fact, the testimony to the contrary, it seems that these, that in fact, there is no testimony to that effect. Do any of these watches, just out of interest, refer to another watch manufacturer that is, besides Hamilton? Yes. So the other brands that are produced are the Illinois and the Chicago, the Illinois is its own separate thing. There's a Chicago watch, which is actually an Elgin watch. And actually that is a current manufacturer who has not raised any concerns. And Waltham, Waltham is the other brand in that I think that goes as the Boston. So, and it has the same features in terms of the backing and the history and the packaging. So this is not a one-off in terms of Hamilton exclusively. Okay. All right. So we'll hear from Mr. Ashen. Mr. Ashen, thank you. Thank you, your honor. Yes. There was a fair amount of discussion referring to things that are not matters of evidence in the record. One of which was the box and the materials that the accused watch are sold with that was not admitted into evidence. The other thing I would like to the effectiveness of the disclaimer prior to undertaking a Polaroid analysis to determine how significant likelihood of confusion was. Why does that matter? So if we said that, have we compelled a particular order of analysis? I think so, your honor. Let me just see if I can, I think there are decisions in which the court has said that in instances where after a Polaroid analysis, the likelihood of confusion was minimal. The effectiveness of a disclaimer would not be as significant. And there are some instances where likelihood of confusion is so significant that no disclaimer could be effective. And without, you know, just by way of analogy, I would. As you discuss this, can you clarify? I think there's a difference between a disclaimer and full disclosure. I think those are two different concepts here. One is the disclosure, which I think your opponent would say is by stamping Vortec in the back. And then disclaimer, I think, would be as if you had a statement saying, I don't know, in the material saying, oh, by the way, this is not a Hamilton. So I think if you could disentangle those two concepts, disclaimer and disclosure. Well, in this case, the disclosure and failure of disclosure, I think occurs when you have an instance where the accused infringer is not describing exactly what the customer is getting. In this case, they're not describing the extent of the modifications. And with regard to disclaimer, I think that is advising consumers that the watch is not affiliated with or from or in any way sponsored by Hamilton. So the disclaimer, I think, goes to the issue of advising the consumer exactly what they're getting. And then a disclaimer goes to the issue of telling the consumer that there's no connection or affiliation with, in this case, the trademark, the original trademark that appears on the watch. So I think those are two things. I would also like to point out that there is no extrinsic evidence in this case of the effectiveness of any, either the disclosure or the disclaimers. All we have is the principle of the defendant saying, I'm not aware of anyone being confused, but there's no evidence. I'm sorry, but isn't it your burden? No, it is the plaintiff's burden to show at least that the disclaimer is ineffective? No, it is clearly the defendant's burden and it's a very high burden. And it is adjusted on a sliding scale, depending on the degree of likelihood of confusion that is determined based on an accurate Polaroid analysis. That's why the Polaroid analysis should occur first. I also might add that in this case, the court not reversed that process, but having filed... Mr. Asher, can you provide me with a case that says that at least in the circumstances that we've got here, it is not the plaintiff's burden to show the ineffectiveness of the disclaimer? Yeah. Homebox office versus Showtime. That's a second circuit decision from 1987. And in that case, the court, second circuit case, the court expressed its skepticism regarding the effectiveness of a disclaimer. So that case involved a prior finding of ineffectiveness. So that's a little bit of a different situation. That's why I said under these circumstances where there is no previous finding and where Judge Nathan was working on where we've said in that circumstance, the plaintiff does not have the burden to show the ineffectiveness of the disclaimer. Your Honor, I can't tell you that case right now. It's helpful. Okay. I want to give you 30 seconds to wrap up and then we'll say goodbye. Okay. The appellee's wristwatches use cases manufactured by them containing rebuilt and modified movements taken from 100-year-old Hamilton pocket watches. For hundreds of years, manufacturers of clocks and watches have been identified by the trademark and the dials and the movements of the timepieces. Again, I would suggest that the appellees haven't met their burden of proving that with empirical evidence that their purported disclaimers were effective in preventing confusion. Thank you very much. I mean, you're going to say for these reasons, you'd ask us to vacate. Absolutely. Thank you. Thank you. Okay. Thank you. Very interesting case. We'll reserve decision.